UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:22-cv- 02300 |
| | ) | |
| $149,020.00 UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT OF FORFEITURE IN REM

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and Kelly Rota, Assistant United States Attorney, alleges as follows:

### NATURE OF THE ACTION

1. The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a), seeking forfeiture of the Defendant Property based on violations of 21 U.S.C. § 801 *et seq*.

### JURISDICTION, AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (district courts have original jurisdiction of all civil actions commenced by the United States) and § 1355 (district courts have original jurisdiction of any action for forfeiture).

3. This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b) (forfeiture action can be brought in district in which any of the acts giving rise to the forfeiture occurred), and Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions (clerk must issue a warrant to arrest property in the government's possession).

4.      This Court is the appropriate venue in this matter pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, in that the forfeiture occurred in the Southern District of Indiana, and the Defendant Property is now, and during the pendency of this action will be, found within the Southern District of Indiana.

## DEFENDANT PROPERTY

5.      The Defendant Property is One Hundred Forty-Nine Thousand, Twenty Dollars in United States Currency ($149,020.00) seized by the United States Department of Homeland Security, Homeland Security Investigations ("DHS-HSI" or "HSI"), on August 3, 2021.

6.      The Defendant Currency has been assigned Asset Identification Number 21-CBP-000578 and has been transferred to the United States Department of Homeland Security, Customs and Border Protection ("DHS-CBP").

## FACTUAL BASIS FOR FORFEITURE

### Airport interdiction

7.      On August 3, 2021, Moshe Haimov was a passenger at Indianapolis International Airport with a scheduled flight to Ft. Lauderdale, Florida via Southwest Airlines. During a routine screening at the security checkpoint, Transportation Security Administration ("TSA") personnel were alerted to a large amount of cash in Moshe Haimov's backpack.  TSA personnel advised that Moshe Haimov stated he and his brother, Levi Haimov, were traveling with $80,000.00 in cash from jewelry sales.   This information was relayed to the Indianapolis Circle City Task Force, which consists of federal, state, and local law enforcement who conduct interdiction investigations at the airport.

2

8.      Task Force officers located Moshe Haimov, and a second individual (later identified as a Levi Haimov) near gate B21. A drug detection canine, Axel, was deployed by his law enforcement partner for a free sniff of passengers who were seated near gate B21.   Axel alerted to Haimov's carry-on backpack, indicating the odor of a narcotic or controlled substance. A task force officer then approached the Haimov brothers and identified himself as law enforcement and asked to speak with them.   Both consented, and they moved to another location away from the gate.

9.      Task Force Officer Kyle Freeman asked Moshe Haimov if he was traveling with a large amount of money, and he replied that he was. Moshe Haimov told law enforcement that he arrived in Indianapolis from Miami, Florida earlier in the morning to conduct business, and that he sold jewelry to an individual, who he identified as "Nate." Moshe Haimov said he could not remember what he sold "Nate" and could not provide any receipt or records pertaining to the sale.   He also told law enforcement that he did not know the exact amount of cash he had in his possession.

10.      Moshe Haimov then consented to a search of his carry-on backpack and cellular phone.   The cell phone had a text string with a "Nate Wale," who Moshe Haimov identified as the person he sold jewelry to earlier in the day. The text string included a video of a marijuana grow operation.   A search of Moshe Haimov's backpack revealed multiple rubber-banded stacks of cash, along with a small amount of jewelry, and a few items of clothing.






11.     TFO Freeman saw a text message from M. Haimov to "Nate Wale" asking for his address.    A reply text read "6471 Creekside Lane 46220" and a follow-up text read, "My house".    Moshe Haimov confirmed that was the address where the jewelry transaction took place, and that he and his brother took an Uber to the 6471 Creekside Lane residence and met with "Nate Wale."    Moshe Haimov stated "Nate Wale" bought jewelry with the cash, but he was unable to say what jewelry was sold and for how much.    When asked if he had a receipt for the transaction, Moshe Haimov advised the receipt was at his business in Miami, Florida.    Moshe Haimov also showed law enforcement the jewelry company's online website and was unable to

4

explain why he traveled to Indianapolis to complete this jewelry transaction in person rather than it being an online transaction.

12.     The Defendant Property was in the sum of $149,020.00 in the following denominations:

| Denomination | Count | Amount |
|---|---|---|
| $1 | 20 | $20.00 |
| $5 | 290 | $1,450.00 |
| $10 | 184 | $1,840.00 |
| $20 | 2403 | $48,060.00 |
| $50 | 67 | $3,350.00 |
| $100 | 943 | $94,300.00 |
| TOTAL | | $149,020.00 |

13.     Task force officers told Moshe Haimov the money was being seized for federal violations of 18 U.S.C. § 981 and 21 U.S.C. § 881 as proceeds related to illegal narcotics trafficking and money laundering based on the marijuana grow video, the positive canine alert on the backpack containing the cash and his USC, and the questionable story about selling an unknown type of jewelry for an unknown amount of money during a very short stay in Indianapolis. Moshe Haimov was provided a Receipt for Property, and he and his brother subsequently boarded their flight for Florida.

14.     Task force officers then took the seized cash to another area of the airport, and the cash was concealed. Canine drug detection dog Axel walked through the area where the money was hidden and again alerted to the odor of narcotics and/or controlled substances on the cash.

5

**Further Investigation**

15.     Law enforcement database queries for the residential address of "Nate Wale" came back associated to Nathan Canary, a marijuana trafficker well-known to law enforcement officers in the Indianapolis, Indiana area. Criminal history checks for Canary revealed a federal conviction from November 2008 for violations of 21 USC § 846, Conspiracy to Distribute 100 Kilograms or More of Marijuana in the Western District of New York. In addition, Canary had a state felony conviction in October 2017 for marijuana possession and dealing marijuana. Law enforcement also seized approximately $5,000 in suspected narcotics proceeds from Canary in October 2019 at the Indianapolis International Airport. A query of Canary's current Indiana driver's license indicated his last known address as the address on Creekside Lane, Indianapolis, Indiana.

16.     At approximately 10:25 p.m. on August 3, 2021, law enforcement executed a search warrant at Canary's Creekside Lane, residence.   Nathan Canary was located inside the residence at the time of the search. Canary agreed to talk with officers. He said the Haimov brothers were at his residence earlier that day to sell jewelry, and to collect money from Canary to pay for a debt on a necklace. Canary told law enforcement that he had been conducting business with Haimov Jewelers for five to six years. He would not say how much money he gave them that day.

17.     Canary stated he is currently involved in a marijuana related business venture. And admitted he has not obtained a lawful permit from any of the states where marijuana has been legalized.

18.     During the search of the residence, law enforcement located the following items:

- Several firearms and ammunition;

6

- Approximately 610.1 grams of marijuana;
- Approximately 1.02 kilograms of marijuana THC wax;
- Approximately 62 marijuana THC vape cartridges;
- Approximately 11 oxycodone pills;
- Approximately 13 amphetamine pills;
- Approximately 548 grams of marijuana THC wax in jars;
- Approximately 478.1 grams of various steroids;
- Approximately 344.7 grams of marijuana THC edibles;
- Drug paraphernalia including a commercial grade money counter, digital scales, smoking pipes/apparatus and vacuum sealing equipment; and
- $93,293 in United States Currency

19.    During the search of the room identified as Canary's office, law enforcement located and seized numerous documents as evidence of distribution of marijuana. These documents included printed out invoices, notebooks utilized as ledgers, handwritten ledgers on sticky notes, shipping manifest documents, manilla files containing customer orders of quantities of marijuana and THC products, and sales order invoices from a marijuana contract manufacturing co-packing and distribution company.

20.    On August 18, 2021, Nathan Canary was indicted on charges of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 (Count 1), Possession of A Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 9224 (c)(Count 21), and Possession of a Firearm as a Previously Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) under Cause Number 1:21-cr-00243.  This indictment was dismissed when Canary was indicted along with 14 other defendants as part of the major drug trafficking conspiracy under *United States of America v. Adediran et al.*, Cause Number 1:22-cr-00057, which was filed on April 12, 2022.

21.    Further investigation revealed that Haimov Jewelers is associated with the lead defendant in the drug trafficking conspiracy case, Adelwale Adediran.

## ADMINISTRATIVE FORFEITURE PROCEEDINGS

22.     DHS-CBP mailed a timely notice of seizure to Moshe Haimov, Levi Haimov, and Haimov Jewelers, notifying them of the agency's intent to pursue administrative forfeiture of the Defendant Currency.   Notice was also sent to Annabelle Nadler, Esq. with the Jeffrey S. Weiner, P.A. law firm.   The notice gave them the options to file a petition for administrative reconsideration, submit an offer in compromise, abandon the property, or file a claim requesting referral for court proceedings.

23.     On October 4, 2021, DHS-CBP received a timely claim from Haimov Jewelers through counsel.

24.     No other claims or petitions were received for the Defendant Property.   After the time for filing claims and petitions administratively expired, DHS-CBP referred the matter to the United States Attorney for review.

## PERTINENT STATUTES AND REGULATIONS

25.     Under 21 U.S.C. § 841(a)(1), it shall be unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance; or…to possess with intent to distribute or dispense a controlled substance.

26.     Marijuana is a Schedule I controlled substance. *See* 21 U.S.C. § 812(c); 21 C.F.R. § 1308.11 (d)(23).

27.     Pursuant to U.S.C. § 881(a)(6), the Defendant Property is subject to forfeiture because it constitutes: (1) money, furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substance Act, 21 U.S.C. § 841 and 846; (2) proceeds traceable to such an exchange; and (3) money intended to be used to facilitate any violation of the Controlled Substance Act.

8

## PRAYER FOR RELIEF

28.     Plaintiff United States of America repeats and incorporates by reference the paragraphs above.

29.     By the foregoing and other acts, the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or money used of intended to be used to facilitate a violation of 21 U.S.C. § 801 *et seq*., and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays that the Clerk of the Court issue a warrant for the arrest of the Defendant Property pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property be forfeited to the United States for disposition according to law; and that the Court enter a finding of reasonable cause for the seizure and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Respectfully submitted,

Zachary A. Myers
United States Attorney

By:     *s/Kelly Rota*
        Kelly Rota
        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market St., Suite 2100
        Indianapolis, Indiana 46204-3048

9

## VERIFICATION

I, Luther Selby, being duly sworn, depose and say:

      1.     I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

      2.     I have been employed by the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since 2010.  I have been a Special Agent for 12 years and have more than 13 years of law enforcement experience.  During that time, I have served as a Special Agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and as a Reserve Deputy Sheriff for the Grant County Sheriff's Department in Grant County, Indiana. I obtained a Bachelor of Arts degree in Finance from Ball State University.  I also have graduated from the Criminal Investigators Training Program (CITP), the Immigration and Customs Enforcement Special Agent Training (ICESAT), and the ATF Special Agent Basic Training (SABT) programs at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA.  I previously was assigned as an ICE/HSI Assistant Special Agent in Charge of  Harlingen, Texas, Rio Grande Valley Border Enforcement Security Task Force, as well as the U.S. Marshal's Service Gulf Coast Violent Offenders and Fugitive Task Force.

      3.     I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I also investigate violations of the federal money laundering and bulk cash smuggling laws, including, but not limited to, Title 18, United States Code, Sections 1956 and 1957, and Title 31, Section 5332.  I have received special training in the enforcement of laws concerning controlled

10

substances as found in Title 21 of the United States Code.

4.      I have received training in investigations involving individuals smuggling, transporting, and distributing illegal narcotics.   I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their utilization of stash houses and other storage facilities, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

5.      I have also received training in money laundering and bulk cash smuggling techniques utilized by drug trafficking organizations to launder, conceal, and transport illicit financial proceeds related to narcotics crimes throughout the United States and across international borders.   I am familiar with the ways in which drug trafficking organizations transport their proceeds, including, but not limited to, their methods of collecting and transporting bulk currency, their use of passenger and commercial vehicles for concealment, their use of currency "mules" and handlers to avoid law enforcement detection, their use of stash houses and other storage facilities, and their use of sophisticated compartments and cross-border smuggling techniques.

6.      In addition to the above training, I have conducted and participated in multiple investigations that have resulted in the seizure of hundreds of kilograms of heroin, cocaine, and methamphetamine, as well as thousands of pounds of marijuana and millions of dollars in United States Currency.   I am familiar with and have participated in all of the normal methods of investigation, including but not limited to, visual surveillance, controlled deliveries, undercover buys, execution of search and arrest warrants, management and use of informants, pen registers, and Title III investigations.

7.     Narcotics trafficking organizations often amass large sums of currency from their narcotics trafficking and other related criminal activities.   The individuals engaged in these illegal activities will attempt to "launder" their illegal profits; which is an attempt to make the illegal profits appear to be from legitimate, or legal, sources to prevent prosecution, avoid seizure and forfeiture of their ill-gotten gains, and to evade tax liabilities.

8.     I know the distribution, manufacture, and sale of illegal narcotics is a violation of the Controlled Substances Act and is, therefore, a Specified Unlawful Activity (SUA) according to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

9.     I have read the foregoing Verified Complaint In Rem and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters I believe to be true.

10.     The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement offices, as well as my investigation of this case, together with others, as a criminal investigator with HSI.

I hereby verify and declare under penalty of perjury that the foregoing information provided on pages 1 through 9 is true and correct.

Dated: November 30, 2022

Luther Selby, Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2022, a copy of the foregoing document was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

I further hereby certify that on November 30, 2022, a copy of the foregoing document was mailed via United States Mail to:

Haimov Jewelers, LLC.
c/o Annabelle Nadler
Jeffrey S. Weiner, P.A. Law Firm
9130 S. Dadeland Boulevard, Suite 1910
Miami, Florida   33156

Haimov Jewelers
33 N.E. 1st Street
Miami, Florida 33132

<div style="margin-left:40%">

ZACHARY A. MYERS
United States Attorney

By:    *s/ Kelly Rota*
Kelly Rota
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333

</div>